# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RIDDELL, INC., | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 16 C 4496 |
| KRANOS CORP., | ) ) ) | |
| Defendant. | ) ) | |
| RIDDELL, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 16 C 4498 |
| XENITH, LLC, | ) ) ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANTS' MOTION TO STAY

Riddell, Inc., a manufacturer of sports equipment, including football helmets. It has sued Kranos Corp., which does business as Schutt Sports, for infringement of U.S. Patent Nos. 8,938,818 (the '818 patent), 8,528,118 (the '118 patent), and 8,813,269 (the '269 patent). Riddell has separately sued Xenith, LLC for infringement of the '818 and '118 patents. *Riddell, Inc. v. Xenith, LLC*, Case No. 16 C 4498 (N.D. Ill.). The two cases have been consolidated for pretrial purposes—including discovery, claim construction, and summary judgment.

Both cases are proceeding under this district's local patent rules. The Court set a schedule in June 2017 that required the parties to exchange initial infringement and

invalidity contentions and related documents on dates in August and September 2016 and final infringement and invalidity contentions on dates in late December 2016 and mid-January 2017. The schedule also required the parties to exchange by January 31, 2017 claim terms and phrases that they contend require construction by the Court. By operation of Local Patent Rule 1.3, fact discovery was to be completed by February 28, 2017—a point about which the Court reminded counsel in early February. Regarding claim construction, the schedule set by the Court required filing of the opening brief on March 7, 2017, the response on April 4, 2017, and the reply on April 18, 2017, with the claim construction hearing set for May 19, 2017. (A few weeks ago, the Court extended the briefing schedule by two weeks but did not move the claim construction hearing date.)

In late August 2016, Kranos moved the Court to stay proceedings in this case pending a decision by the U.S. Patent and Trademark Office's Patent Trial and Appeal Board (PTAB) on *inter partes* review (IPR) petitions that Kranos had filed with regard to all three patents in suit and all of the claims of the patents asserted by Riddell against the two defendants. Xenith joined in the motion to stay, though it had not filed its own IPR petitions. On October 7, 2016, the Court denied the motion as premature because the PTAB had not yet determined whether to institute IPR proceedings.

Kranos has now renewed its motion to stay. On February 10, 2017, the PTAB granted Kranos's IPR petitions in part. Specifically, the PTAB granted review, on specified grounds, with regard to 23 of the 53 claims asserted by Riddell against Kranos. The PTAB did not grant review on the other 30 claims. Kranos contends that a stay pending conclusion of the IPR proceedings will ultimately streamline the case and

2

reduce the burden on the parties and the Court. Xenith, which as just noted did not petition for IPR, has joined in Kranos's motion to stay. Riddell opposes defendants' motion.

## Discussion

A court has the inherent authority to stay proceedings in a case to conserve its own time and that of the parties. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In considering whether to grant a stay, a court exercises its judgment by "weigh[ing] [the] competing interests and maintain[ing] an even balance." *Id.* Generally speaking, a court considers whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; whether a stay will simplify the issues and the trial; and how far the proceedings in the case have advanced. Courts also may consider whether a stay or denial of a stay would reduce the burden of litigation on the parties and the court. *See, e.g., Invensys Sys., Inc. v. Emerson Elec. Co.*, No. 6:12-CV-00799, 2014 WL 4477393, at *1 (E.D. Tex. July 25, 2014); *Ignite USA, LLC v. Pacific Market Int'l, LLC*, No. 14 C 856, 2014 WL 2505166, at *2 (N.D. Ill. May 29, 2014).

**1.    Prejudice and tactical disadvantage**

Delay alone is not enough to tip the balance or to constitute unfair prejudice, as it is present in any case in which a stay is sought. *See, e.g., NFC Tech. LLC v. IFTC Am., Inc.*, No. 2:13-CV-1058, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015); *Ignite USA*, 2014 WL 2505166, at *2. Here, however, Riddell does not rely merely on the proposition that a stay will delay determination of its claims. Both Kranos and Xenith are direct competitors of Riddell. Riddell contends that it will be unfairly prejudiced by a stay; it says it "should not have to continue to compete with, and lose market share to, .

3

. . companies who simply copied Riddell's helmet to remain relevant in the market." Pl.'s Resp. at 8. Competition between the parties can weigh in favor of a finding of undue prejudice. *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). On the other hand, Kranos points out that Riddell did not move for a preliminary injunction, and that is a factor appropriately considered in assessing the degree of prejudice. *See id.* at 1319. Riddell says, however, that it made this decision in order to conserve its resources. Riddell was also entitled to rely on the fact that the Court would keep the litigation moving expeditiously as contemplated by this district's local patent rules. The Federal Circuit has acknowledged that a party's failure to move for a preliminary injunction "is not dispositive" of the issue of undue prejudice and that there can be "a variety of reasons that a patentee does not move for a preliminary injunction." *Id.*

More significantly, Riddell argues persuasively that staying the case pending the IPR proceeding instituted by Kranos would cause Riddell a tactical disadvantage. Under the statute governing the interaction between IPR proceedings and patent infringement litigation in court, the petitioner in an IPR proceeding—in this case, Kranos—is estopped from asserting in litigation any ground for invalidity that it raised or reasonably could have raised during the IPR. 35 U.S.C. § 315(e)(2). Thus if, for example, the PTAB rejects a particular ground of invalidity asserted by Kranos, Kranos cannot re-assert that ground in this lawsuit. In other words, an alleged infringer that institutes IPR proceedings faces a tradeoff. But this same bar will not apply to Xenith, which did not seek institution of IPR proceedings but which would benefit from favorable rulings in the IPR instituted by Kranos. Thus the defendants collectively will get two

bites at the invalidity apple if the Court stays this case pending conclusion of the IPR proceedings.

The Court concludes that the prejudice / tactical disadvantage factor weighs against a stay, though not as much as Riddell contends.

**2.      Simplification of the issues / reducing the burden of litigation**

There are a number of ways in which an IPR proceeding may simplify the issues for litigation:

- Any prior art presented to the Court will have been first considered by the PTAB, with its particular expertise.

- Discovery problems relating to prior art can be alleviated.

- If the IPR results in a finding or effective finding of invalidity, the suit likely will be dismissed.

- The outcome of the IPR may encourage a settlement.

- The record of the IPR may be entered at the trial.

- Issues, defenses, and evidence will be more easily limited after an IPR.

- The cost of litigation likely will be reduced.

*See NFC Tech.*, 2014 WL 2505166, at *4.

Not all of these considerations apply here, however.  First, there are no "discovery issues relating to prior art" in this case.  This district's local patent rules set clear requirements for disclosure of prior art, requiring all of it to have been produced by this point in the litigation.  Neither party has identified any problems or concerns.  In theory an issue may arise from depositions relating to prior art, but in the Court's experience such depositions are not all that common to begin with, and disputes about

them are virtually nonexistent. There is no reason to think the contrary would be true here.

Second, and more significantly, the IPR proceedings do not cover all, or even nearly all, of the patent claims at issue in this case. Rather, as discussed earlier, the PTAB instituted IPR proceedings on 23 of the 53 claims at issue, but not on the other 30. Thus a significant number of claims will remain for determination in this suit irrespective of the outcome of the IPR. Kranos argues that nearly all of these are dependent claims and that it is therefore likely that the PTAB's decision will simplify matters even on the claims the PTAB does not review. That likely is true. *See, e.g., Moneycat Ltd. v. Paypal Inc.*, No. 14-cv-02490, 2014 WL 5689844, at *3 (N.D. Cal. Nov. 4, 2014). But as Riddell argues, the Court's assessment of the claims on which the PTAB has not instituted review will be based on a different standard of claim construction, *see, e.g., Intellectual Ventures I LLC v. Toshiba Corp.*, No. Civ. 13-453, 2015 WL 3773779, at *3 (D. Del. May 15, 2015), and the defendants (collectively) likely will advance a broader set of invalidity challenges. Thus the extent to which the PTAB's eventual decision will affect litigation on the non-instituted claims is less than clear. And because, as noted earlier, the estoppel provided by section 315(e)(2) will not apply to Xenith, the ultimate effect of a stay on the overall cost of the litigation is likewise less than clear.

The Court concludes that this factor weighs in favor of a stay, though not as much as Kranos contends.

**3.    Stage of the litigation**

Kranos filed its motion to stay promptly, first after filing its IPR petitions and then

6

again after the PTAB's decision to institute IPR proceedings. Kranos argues that the case is at an early stage and little discovery has been done and that this favors entry of a stay. The first part of this argument is incorrect, and the second is misleading. First, based on the schedule the Court set pursuant to this district's local patent rules, the parties have already exchanged not just their initial infringement and invalidity contentions, but also their *final* infringement and invalidity contentions. They have also exchanged, pursuant to the schedule set by the Court, the claim terms that they contend require construction. Second, as indicated earlier, Local Patent Rule 1.3 required fact discovery to be completed by February 28, 2017. Both parties evidently operated under a misunderstanding and anticipated doing a good deal of fact discovery after the not-yet-made claim construction ruling. But Rule 1.3 is clear on its face; it requires fact discovery to be completed "twenty-eight (28) days after the date for exchange of claim terms and phrased under LPR 4.1." N.D. Ill. LPR 1.3. Rule 1.3 says that fact discovery "may resume" for a brief period—6 weeks—after a ruling on claim construction, but the comment to that rule makes it crystal clear that discovery does not "automatically resume as a matter of right" but rather that any party seeking further discovery after the claim construction ruling must submit a motion explaining why the court's ruling on claim construction necessitates further discovery. *Id.* And in any event, the period for additional fact discovery that the rule might permit is short, just six weeks. Further, when the Court reminded the parties in early February of the impending discovery cutoff date, Riddell quickly got its act together and promptly sought to complete fact discovery. Kranos did not. Thus when Kranos says that discovery has barely started, it is essentially attempting to inappropriately leverage its own inattention

into a factor to be counted in its favor on its request for a stay.

Kranos also points out, and it is true, that no trial date has been set in this case. But the remainder of the pretrial schedule is in place, either by virtue of the Court's scheduling orders or due to the application of this district's local patent rules. Because of those rules, it is relatively easy to predict how long it will take before the cases are concluded. As indicated earlier, the claim construction hearing is set for May 19, 2017. The Court previously declined to extend that date. The Court contemplates, and is willing to commit, that it will rule on claim construction within five weeks after the hearing, that is, by June 23, 2017. And then the rest of the pretrial schedule is established by Local Patent Rules 5.1, 5.2, 5.3, and 6.1. Specifically, if the Court rules on claim construction on June 23, 2017:

- each party's Rule 26(a)(2) expert disclosures will be due on July 14, 2017;
- each party's rebuttal Rule 26(a)(2) disclosure will be due on August 18, 2017;
- expert depositions will have to be completed by September 22, 2017; and
- dispositive motions will have to be filed by October 20, 2017.

*See* N.D. Ill. LPR 5.1, 5.2, 5.3, 6.1. It is reasonable to expect that summary judgment briefing will be completed before the end of 2017 and that a ruling will be made by late January or mid-February 2018. That would make the case trial-ready (assuming anything is left to try at that point), with a likely trial date in the late spring or early summer of 2018. And this is only if the claim construction ruling does not prompt a settlement, which is quite often what happens after a claim construction ruling is made and the parties are facing relatively tight deadlines to fish or cut bait.

The Court compares this with the schedule that will apply to the IPR proceedings

on the three patents in suit and to this case if a stay is granted. The regulations governing IPR proceedings say that the time of "pendency before the [PTAB] after institution is normally no more than one year," but this can be extended by up to six months for good cause. 37 C.F.R. § 42.100(c). This means that the PTAB is likely to issue its ruling in IPR proceedings involving the three patents in suit by February 10, 2018, but it may be as late as August 2018. And then the losing party may appeal to the Federal Circuit, which disposes of cases, on average, in about 10 to 11 months. That carries the IPR litigation through the end of 2018 at the earliest and possibly until the middle of 2019. If, as one reasonably may expect, proceedings in the present case are simplified to some extent at that point, the case likely would not take quite as long to resolve as the 15-16 months the Court anticipates it would take through trial in the event a stay is denied. But, by the same token, the litigation likely would not be over in the blink of an eye either.

In short, this case is at a reasonably advanced stage in terms of discovery and disclosures; the claim construction process has begun, and claim construction briefing and ruling will be completed within the next three months or so; and the lawsuit will proceed apace after that. None of this is speculative; rather it is established by this district's local patent rules.

Denial of a stay means running a risk of conflicting rulings, but if the PTAB adheres to the 12-month presumptive deadline in its regulations, the Court would be able to make whatever adjustments the PTAB's ruling requires with regard to the defenses in this case well before the trial.

### 4.     Summary

A stay pending the conclusion of the IPR proceedings likely would simplify this issues in this case to some extent.  But the IPR proceedings involve less than half of the claims asserted in this case, so the case is highly unlikely to be disposed of completely by the decision by the PTAB and the Federal Circuit (if an appeal is taken).  And Xenith, which did not petition for IPR, will not be bound by the same estoppel that will bind Kranos, which diminishes the overall benefit to be obtained from a stay.  That said, the parties and the Court would benefit from a stay to some extent by taking some issues off the table and avoiding duplication of effort.

On the other hand, Riddell has presented a viable argument that it will suffer unfair prejudice if a stay is granted given the fact that it directly competes with both defendants.  And Riddell would be put at risk of a tactical disadvantage due to the fact, noted above, that Xenith will get to replay before the Court all of the invalidity contentions that Kranos asserts before the PTAB, even on points on which Kranos loses during the IPR proceedings.

Finally, given the stage of the litigation and the likely disposition tracks of this case and the IPR proceedings, if this case proceeds, claim construction will be determined within the next three or so months, and there is a reasonable likelihood that critical rulings on not just validity but also infringement will be made at or before the conclusion of the IPR proceedings, which address only validity, not infringement.  A stay would bring matters to a grinding halt for a period of somewhere between a year and two years, depending on whether there is an appeal of the IPR rulings.

As Judge Holderman stated in the *Ignite USA* case, there is no *per se* rule that a

patent infringement suit must be stay pending a parallel IPR. *Ignite USA*, 2014 WL 2505166, at *2. And the party seeking a stay "has the burden of showing that it is warranted." *Id.* Having weighed the competing factors, the Court concludes that Kranos has failed to show that a stay is warranted in this case.

## Conclusion

For the reasons stated above, the Court denies Kranos Corp.'s renewed motion to stay [dkt. no. 84], in which Xenith LLC has joined [dkt. no. 87].

Date: March 12, 2017

_____
MATTHEW F. KENNELLY
United States District Judge